# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Information about the location of a cellular telephone assigned phone number (941) 809-5186 ("Target Cell Phone B"), | )<br>)<br>) Case No. 21-813M(NJ)<br>)<br>)<br>) |

**APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS**

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See attachment A

located in the __Eastern__ District of __Wisconsin__, there is now concealed *(identify the person or describe the property to be seized)*:

See attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 21, USC, Sections 841 and 846 and Title 18, USC Code, Sections 1956 and 1957 | See attached affidavit |

The application is based on these facts:

See attached affidavit

- ☐ Continued on the attached sheet.
- ☑ Delayed notice of __180__ days *(give exact ending date if more than 30 days:* __09/04/2021__ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

MATTHEW COOPER (Affiliate)
*Digitally signed by MATTHEW COOPER (Affiliate)*
*Date: 2021.03.09 11:03:57 -06'00'*

*Applicant's signature*

DEA TFO Matthew Cooper
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by __telephone__ *(specify reliable electronic means)*.

Date: March 9, 2021

*Judge's signature*

City and state: Milwaukee, WI.

Honorable Nancy Joseph
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF
# AN APPLICATION FOR SEARCH WARRANT

I, Matthew Cooper, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of a cellular telephone assigned phone number **(941) 809-5186** ("**Target Cell Phone B**"), whose cell phone provider is T-Mobile, a wireless telephone service provider headquartered in Bellevue, Washington. **Target Cell Phone B** is described herein, and in Attachment A, and the location information to be seized is described herein, and in Attachment B.

2. I am employed as a Detective with the Milwaukee Police Department and have been a law enforcement officer for over 23 years. I have been a Detective for over 17 years and have been assigned to conduct narcotics investigations for over 16 years. I was previously assigned to the Vice Control Division (Narcotics) as a Police Officer for over 2 years. I have been assigned to the High Intensity Drug Trafficking Area (HIDTA) for over 12 years. I am also a Task Force Officer with the United States Department of Justice, Drug Enforcement Administration (DEA), and have been since October 2008. As such, I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code, in that I am empowered by law to conduct investigations of and to make arrests for federal felony offenses.

3. I have participated in numerous complex narcotics investigations which involved violations of state and federal controlled substances laws and money laundering laws including Title 21, United States Code, Sections 841(a)(1), 843(b) and 846, and Title 18, United States

1

Code, Sections 1956 and 1957, and other related offenses. I have had both formal training and have participated in numerous complex drug trafficking investigations, including ones using wiretaps. More specifically, my training and experience includes the following:

- a. I have utilized informants to investigate drug trafficking. Through informant interviews, and extensive debriefings of individuals involved in drug trafficking, I have learned about the manner in which individuals and organizations distribute controlled substances in Wisconsin and throughout the United States;

- b. I have also relied upon informants to obtain controlled substances from dealers and have made undercover purchases of controlled substances;

- c. I have extensive experience conducting street surveillance of individuals engaged in drug trafficking. I have participated in the execution of numerous search warrants where controlled substances, drug paraphernalia, and drug trafficking records were seized;

- d. I am familiar with the appearance and street names of various drugs, including marijuana, heroin, cocaine, cocaine base (unless otherwise noted, all references to crack cocaine in this affidavit is cocaine base in the form of crack cocaine), ecstasy, fentanyl, and methamphetamine. I am familiar with the methods used by drug dealers to package and prepare controlled substances for sale. I know the street values of different quantities of the various controlled substances;

- e. I am familiar with the language utilized over the telephone to discuss drug trafficking, and know that the language is often limited, guarded, and coded;

- f. I know that drug traffickers often use electronic equipment and wireless and landline telephones to conduct drug trafficking operations;

- g. I know that drug traffickers commonly have in their possession, and at their residences and other locations where they exercise dominion and control, firearms, ammunition, and records or receipts pertaining to such;

- h. I have been assigned to court-authorized wiretaps and have been trained to operate the equipment utilized to conduct such operations;

- i. I know that drug traffickers often put their telephones in nominee names in order to distance themselves from telephones that are utilized to facilitate drug trafficking; and

- j. I know that drug traffickers often use drug proceeds to purchase assets such as vehicles, property, and jewelry. I also know that drug traffickers often use

2

nominees to purchase and/or title these assets in order to avoid scrutiny from law enforcement officials.

4. I am currently participating in an investigation of drug trafficking and money laundering involving Dwight CLAYTON, Kevin MATHIS, and Hector TERAN-VARGAS. I am familiar with the facts and circumstances regarding this investigation as a result of my personal participation in this investigation, and my review of: (a) reports prepared by, and information obtained from, other federal, state, and local law enforcement agents and officers, all of whom I believe to be truthful and reliable; and (b) financial records obtained via subpoena. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of Title 21, United States Code, Sections 841(a)(1), 843(b) and 846, and Title 18, United States Code, Sections 1956 and 1957, have been committed, are being committed, and will be committed by Dwight CLAYTON, Kevin MATHIS, Hector TERAN-VARGAS, and others not yet identified. There is also probable cause to believe that the location information described in Attachment B will constitute evidence of these criminal violations and will lead to the identification of individuals who are engaged in the commission of these offenses.

6. The Court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offenses being investigated; *see* 18 U.S.C. § 2711(3)(A)(i).

3

Case 2:21-mj-00813-NJ    Filed 03/09/21    Page 4 of 19    Document 1

## PROBABLE CAUSE

7. Since March 2020, case agents have been conducting an investigation into the drug trafficking and money laundering activities of Dwight CLAYTON in Milwaukee, Wisconsin.

8. On August 20, 2020, the Federal Bureau of Investigation (FBI) National Threat Operations Center received an online tip via tips.fbi.gov regarding potential international drug trafficking and tax evasion. The tip identified Dwight CLAYTON and stated that individuals are using a business called S&C Trucking LLC to hide proceeds in Milwaukee, Wisconsin. The tip identified the owner of S&C Trucking LLC, 1918 East Lafayette Place #309, Milwaukee, Wisconsin, as being involved in drug trafficking and identified the owner as Dwight CLAYTON. The tip stated that the business is registered "with the DOT under a different address which is a home." The tipster further reported that CLAYTON had been sent to prison for federal drug charges in the past.

9. A search of Wisconsin Department of Financial Institutions records revealed that Dwight CLAYTON is the registered agent of S&C Trucking LLC. The LLC address listed for the business is 9736 West Tower Avenue, Milwaukee, Wisconsin. Case agents have conducted surveillance at this location on several occasions and have never seen a person or vehicle, other than Dwight CLAYTON, come or go from the residence. Additionally, cameras are mounted on all sides of the exterior of the residence and all of the window blinds are closed. I am aware, based on my training and experience, that drug traffickers frequently maintain "stash" houses which are residences used to store drugs prior to distribution and/or to store proceeds of drug sales after distribution. These residences typically have little vehicle or pedestrian traffic so as to avoid drawing attention to the house. Additionally, cameras are often mounted to the exterior of

"stash" houses to allow the drug trafficker to observe if the residence is being approached by Police or rival drug traffickers.

10. On October 20, 2020, Texas Department of Public Safety investigators were conducting surveillance at a suspicious business in Pharr, Texas. Investigators observed an open overhead garage door at the business warehouse and observed a pallet containing several boxes sitting next to a pickup truck in the business. The rest of the warehouse appeared to be empty. A short time later, a truck belonging to Estes Express Lines arrived, loaded the pallet onto a truck, and left the business. Investigators maintained surveillance until the truck arrived at the Estes Express Lines property. Investigators subsequently approached the employees of the company and inquired about the pallet. Investigators were provided with the bill of lading related to the shipment. The bill of lading indicated that the pallet contained 492 pounds of optical cable and was being shipped from Dixie Cable, 2003 North Veterans Boulevard, Suite 18, Pharr, Texas 78577 to Raul Gallegos, 1850 North Doctor Martin Luther King Jr. Drive #210, Milwaukee, Wisconsin 53212. The shipper name was listed as Carlos Trevino with phone number (956) 996-2424. The recipient was listed as Raul Gallegos with phone number (657) 261-1934. Investigators conducted a K-9 sniff of the pallet and received a positive alert for the presence of controlled substances. A subsequent search of the pallet revealed approximately 61 kilograms of cocaine concealed within the boxes on the pallet.

11. Shipping records revealed that three prior shipments had been sent from Pharr, Texas to 1850 North Doctor Martin Luther King Jr. Drive #210, Milwaukee, Wisconsin 53212. Two of those shipments had been picked up at the shipping company, on August 28, 2020, and September 25, 2020. Telephone records later revealed that Dwight CLAYTON, using (414) 469-6235, was in phone contact with (657) 261-1934, the number listed above for Raul Gallegos,

on August 27, 2020. The third shipment had been delivered on August 14, 2020, to 1850 North Doctor Martin Luther King Jr. Drive #210, Milwaukee, Wisconsin 53212. Case agents obtained surveillance video which showed that on August 14, 2020, Dwight CLAYTON arrived at the side of the business at 1850 North Martin Luther King Jr. Drive, driving a black Dodge Ram 2500 pickup. The bed of the pickup was empty upon his arrival. A short time later, a box truck driven by the shipping contractor arrived and parked on the side of the business. CLAYTON was observed positioning the Dodge Ram near the shipping company vehicle. A short time later, CLAYTON drove away from the area. The bed of the Dodge Ram now contained what appeared to be a shipping pallet. This pallet was similar in appearance to the pallet seized in Pharr, Texas on October 20, 2020.

12. On November 2, 2020, the Honorable William E. Duffin, United States Magistrate Judge in the Eastern District of Wisconsin, signed a tracking warrant for a silver 2015 Kia Optima, bearing Wisconsin license plates ACV-2064, known to be driven by Dwight CLAYTON. On November 24, 2020, case agents observed that the Kia left 9736 West Tower Avenue, Milwaukee, Wisconsin, and travelled directly to a vacant lot in the 4700 block of South Packard Avenue, Cudahy, Wisconsin. Case agents responded to that area to conduct surveillance of the Kia. At 3:27 p.m., case agents observed that the Kia had travelled to the parking lot of a BMO Harris Bank located at 4677 South Packard Avenue, Cudahy, Wisconsin. Case agents conducted surveillance of the Kia and observed CLAYTON in the driver's seat and a second unidentified male in the front passenger seat. The second male appeared to be looking down at the passenger-side floorboard. At 3:35 p.m., the Kia drove out of the BMO Harris parking lot and drove back to the 4700 block of South Packard Avenue. The Kia did a U-turn and pulled to the curb on the south side of the street. Case agents observed the unidentified male exit the front

passenger seat and retrieve a small rolling suitcase and a small duffel bag from the vehicle. The male then entered the JP Morgan Chase Bank at 4702 South Packard Avenue, Cudahy, Wisconsin. CLAYTON drove the Kia out of the area and was not followed.

13. The unidentified male approached a teller window and appeared to be conducting a lengthy transaction. At 4:34 p.m., the male exited the bank and stood in front of the bank looking at his cellular phone. At 4:42 p.m., a vehicle displaying an Uber sticker arrived in front of the bank. The male opened the rear cargo area of the vehicle and placed the suitcase and the duffel bag into the vehicle. Case agents followed the vehicle to the Hilton Garden Inn – Milwaukee Airport, 5890 South Howell Avenue, Milwaukee, Wisconsin, where the male exited the vehicle and entered the hotel.

14. Case agents interviewed employees at the JP Morgan Chase Bank who stated that the male had made a large cash deposit, but provided no additional information about the transaction. A subpoena served on JP Morgan Chase later revealed that the male had deposited $169,650 in United States currency to an account held by Redzien, LLC, a business organized in the State of Florida. A search of Florida corporation records identified the registered agent for Redzien, LLC as Kevin MATHIS, of 10870 West Sample Road # 4504, Coral Springs, Florida. The Articles of Organization for Redzien LLC identify MATHIS and Hector M. VARGAS, a.k.a Hector TERAN-VARGAS, as Managers of the LLC. Additional banking records identified MATHIS' phone number as **(941) 809-5186 (Target Cell Phone B)** and TERAN-VARGAS' phone number as (832) 212-3490 (Target Cell Phone C). An Administrative Subpoena served on T-Mobile identified the subscriber to Target Cell Phone C as Hector Teran of 8152 Emerald Forest Court, Sanford, Florida 32771.

7

15. Case agents have obtained banking records via subpoena from JP Morgan Chase Bank. These records indicate that the account that received the $169,650 cash deposit is in the name of Redzien, LLC of 934 N. University Drive, Unit 323, Coral Springs, FL 33071. The authorized signers on the account are Kevin MATHIS and Hector Manuel TERAN-VARGAS. TERAN-VARGAS' phone number is identified in banking records as (832) 212-3490 (Target Cell Phone C). Banking records for this account show that the account was opened on September 23, 2020.

16. Since that account has been open, it continues to receive numerous, large cash deposits made in bank branches throughout the United States. The account received the following total cash deposits during the following months:

- September 2020     $58,000
- October 2020       $1,517,473
- November 2020      $1,743,800
- December 2020      $1,475,438
- January 2021       $2,620,292
- February 2021      $511,800 (As of February 4, 2021)

Records indicate that soon after these deposits are made, money is wired out of the account to brokerage accounts of companies in Mexico and the British Virgin Islands. The brokerage firms receiving these wires have previously been identified as being involved in money laundering in numerous drug trafficking and money laundering investigations being conducted by DEA. Additional charges to the JP Morgan Chase account are consistent with travel throughout the United States, such as airline purchases, hotel charges, Uber ride-share fees, restaurants, etc.

8

Case agents believe this travel is consistent with money launderers travelling the United States to further their money laundering activities.

17. On January 20, 2020, case agents spoke to a representative of Bank of America's Global Financial Crimes Investigations – Anti-Money Laundering department. The representative advised that from November 23, 2020, thru January 5, 2020, Kevin MATHIS and Hector TERAN-VARGAS had deposited approximately $1,000,000 into accounts at Bank of America. Bank of America subsequently closed those accounts due to suspicions that the accounts were being used for money laundering.

18. On January 15, 2021, the Honorable William E. Duffin, United Magistrate Judge in the Eastern District of Wisconsin, signed a warrant authorizing the search of (224) 283-2776 (Target Cell Phone D). More specifically, the warrant directed Verizon Wireless to provide information about the location of (224) 283-2776 for a period of 45 days. The Court's Order was sent to Verizon Wireless on January 15, 2021. Case agents started receiving location information for (224) 283-2776 (Target Cell Phone D) on January 16, 2021 at 11:13 a.m. Since case agents started receiving location information for (224) 283-2776 (Target Cell Phone D), they have observed that the phone is travelling in tandem with **(941) 809-5186 (Target Cell Phone B)**. The two phones have travelled together to Coral Springs, Florida; Fort Lauderdale, Florida; New Orleans, Louisiana; Orlando, Florida; Salt Lake City, Utah; Denver, Colorado; Boston, Massachusetts, Minneapolis, Minnesota; and Milwaukee, Wisconsin. Case agents believe that (224) 283-2776 (Target Cell Phone D) is a second phone being used by Kevin MATHIS to coordinate money laundering activities throughout the United States.

19. On January 27, 2020, at about 5:15 p.m., court-authorized positional information for (224) 283-2776 (Target Cell Phone D) showed that MATHIS had arrived in Milwaukee,

9

Wisconsin. Case agents believed the purpose of this trip was for MATHIS to pick up money from Dwight CLAYTON and deposit it to a bank account. At approximately 7:00 p.m., case agents monitoring a court-authorized GPS tracking device on the Subject Vehicle used by CLAYTON noticed CLAYTON was travelling south in the direction of the airport. At approximately 7:15 p.m., at the request of case agents, a Milwaukee County Sheriff's Office Deputy conducted a traffic stop of the Subject Vehicle for speeding and unsafe lane deviation. The Deputy decided to tow the Subject Vehicle due to an equipment violation. During an inventory search, the Deputy located a black backpack containing a large amount of United States currency, later determined to be $149,980. After discovering the backpack, CLAYTON consented to a search of the rest of the Subject Vehicle. Nothing additional of evidentiary value was located. The Deputy asked CLAYTON how much money was in the backpack. CLAYTON responded that he didn't know and told the Deputy that he owned a trucking business and the money was from his business. Case agents believe the currency was going to be delivered to MATHIS to be deposited to a bank account and laundered further. Shortly after the Subject Vehicle was towed, case agents removed the tracking device from the vehicle in case CLAYTON decided to search his vehicles for tracking devices.

20. A review of banking records revealed that from September 1, 2020, through February 4, 2021, Kevin MATHIS and Hector TERAN-VARGAS deposited $13,415,855 into accounts at Wells Fargo, Bank of America, JP Morgan Chase Bank, and Regions Bank. These deposits occurred in 19 different States. The accounts at Wells Fargo and Bank of America have since been closed by the banks for suspicion of being involved in money laundering.

21. On February 8, 2021, case agents monitoring the location information for **(941) 809-5186 (Target Cell Phone B)**, used by Kevin MATHIS, observed the phone in the area of

Milwaukee's General Mitchell airport. The phone stayed in the area of the airport for the remainder of the night. Throughout that night, and into the morning, MATHIS was in regular contact with (951) 707-3154, a phone believed to be used by a subject coordinating the pickup of bulk currency from Dwight CLAYTON.

22. On February 9, 2021, at 9:05 a.m., case agents established surveillance at the Hilton Garden Inn, 5890 South Howell Avenue, Milwaukee, Wisconsin. At 9:15 a.m., case agents observed CLAYTON's silver Kia park east of the hotel entrance with the hazard lights on. At 9:20 a.m., case agents observed Kevin MATHIS walk out of the hotel carrying a dark blue backpack. MATHIS entered the front passenger seat of the Kia. The Kia drove to the rear of the parking lot and parked. Case agents observed MATHIS retrieve a different light blue backpack from the trunk of the Kia and re-enter the front passenger seat. Case agents observed MATHIS appearing to exchange items between the light blue backpack and his dark blue backpack. MATHIS then put the light blue backpack in the backseat which appeared to be empty. At 9:25 a.m., case agents observed the Kia drive back to the front entrance of the hotel and observed MATHIS exit the vehicle carrying his dark blue backpack. The Kia then departed the area and was not followed.

23. At 9:45 a.m., case agents observed a blue Chevrolet Impala park at the front entrance of the hotel. Shortly thereafter, case agents observed MATHIS exit the hotel carrying a rolling luggage suitcase and the dark blue backpack. MATHIS put those items in the trunk and entered the rear passenger seat of the Impala. Case agents are aware, based on the investigation to date, that MATHIS frequently uses Uber for rides. Agents believe this vehicle was an Uber vehicle. At 9:56 a.m., the Impala pulled over on East Layton Avenue just east of South Packard Avenue in front of the JP Morgan Chase Bank located at 4702 South Packard Avenue, Cudahy,

Wisconsin. Case agents observed MATHIS exit the Impala, retrieve the suitcase and backpack, and walk inside the bank. Surveillance was terminated shortly thereafter. Case agents later confirmed that MATHIS deposited $200,000 in the Redzien account at the JP Morgan Chase Bank in Cudahy, Wisconsin. Case agents believe this money had been delivered to MATHIS by CLAYTON.

24. On January 22, 2021, the Honorable Stephen Dries, United States Magistrate Judge in the Eastern District of Wisconsin, signed a warrant authorizing the continued search of a T-Mobile cellular telephone assigned cellular phone number **(941) 809-5186 (Target Cell Phone B)**. More specifically, the warrant directed T-Mobile to continue to provide information about the location of **(941) 809-5186 (Target Cell Phone B)** for a period of 45 days. The authorization granted by this order expired on March 8, 2021.

25. Since case agents have been receiving location information **(941) 809-5186 (Target Cell Phone B)**, they have used that information to further the investigation into the money laundering activities of Kevin MATHIS. More specifically, case agents have used the location information to determine what Cities MATHIS has travelled to in order to make bank deposits. For example, location information for **(941) 809-5186 (Target Cell Phone B)** showed that on February 23, 2021, the phone was located in New Orleans, Louisiana. Case agents contacted DEA-New Orleans and requested assistance with surveillance at the phone's location. Case agents established surveillance at a hotel known to be frequented by MATHIS which was consistent with the phone's location. Case agents observed a silver Nissan Sentra arrive in the front driveway of the hotel and observed a white male, wearing jeans, a black sweatshirt, a black hat, and a mask exit the front of the hotel carrying a black bag. Case agents then observed the male place the bag in the trunk of the vehicle and enter the rear passenger's side before the

12

vehicle departed. A short time later, case agents observed the Nissan Sentra driving away from the side door of Regions Bank, 3525 Williams Boulevard, Kenner, Louisiana. Case agents observed the male who exited the hotel, now wearing a lime green long-sleeved t-shirt and maskless, standing on the north side of the bank near the entrance. Case agents drove past the male and positively identified him as MATHIS. A short time later, case agents observed MATHIS enter the Regions bank. Case agents believe MATHIS made a deposit of drug proceeds at the Regions Bank.

26. Court-authorized positional information for **(941) 809-5186 (Target Cell Phone B)** revealed that MATHIS was in Philadelphia, Pennsylvania and Bloomington, Minnesota on March 2, 2021; Columbus, Ohio on March 3, 2021; Denver, Colorado on March 4, 2021; and San Diego, California and Temecula, California on March 5, 2021. Several of these locations are Cities where MATHIS has made bank deposits of suspected drug proceeds in the past. Case agents believe the purpose of these travels is to further MATHIS' money laundering activities.

27. Case agents believe, based on the numerous, large cash deposits followed by wire transfers to foreign accounts, travel throughout the United States in furtherance of money laundering, and the lack of a legitimate business purpose for large cash transactions involving Redzien, LLC (a mining business), that Kevin MATHIS and Hector TERAN-VARGAS are involved in laundering of drug proceeds throughout the United States, including in the Eastern District of Wisconsin. Telephone records reveal that MATHIS, using **(941) 809-5186 (Target Cell Phone B)**, is in regular and frequent contact with TERAN-VARGAS, using (832) 212-3490 (Target Cell Phone C), including as recently as March 8, 2021.

28. In my training and experience, I have learned that T-Mobile is a company that provides cellular telephone access to the general public. I also know that providers of cellular

13

telephone service have technical capabilities that allow them to collect and generate at least two kinds of information about the locations of the cellular telephones to which they provide service: (1) E-911 Phase II data, also known as GPS data or latitude-longitude data, and (2) cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data.

29. Based on my training and experience, I know that T-Mobile can collect E-911 Phase II data about the location of **Target Cell Phone B**, including by initiating a signal to determine the location of **Target Cell Phone B** on T-Mobile's network or with such other reference points as may be reasonably available.

30. Based on my training and experience, I know that T-Mobile can collect cell-site data about **Target Cell Phone B**.

AUTHORIZATION REQUEST

31. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

14

32. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 180 days after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of **Target Cell Phone B** would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

33. I further request that the Court direct T-Mobile to disclose to the government any information described in Attachment B that is within the possession, custody, or control of T-Mobile. I also request that the Court direct T-Mobile to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with T-Mobile's services, including by initiating a signal to determine the location of **Target Cell Phone B** on T-Mobile's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate T-Mobile for reasonable expenses incurred in furnishing such facilities or assistance.

15

Case 2:21-mj-00813-NJ    Filed 03/09/21    Page 16 of 19    Document 1

34. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate **Target Cell Phone B** outside of daytime hours.

ATTACHMENT A

Property to Be Searched

1. The cellular telephone assigned cell number **(941) 809-5186**, whose wireless communications service provider is T-Mobile, 4 Sylvan Way, Parsippany, New Jersey 07054.

2. Information about the location of **(941) 809-5186** that is within the possession, custody, or control of T-Mobile.

ATTACHMENT B

Particular Things to be Seized

All information about the location of **(941) 809-5186** described in Attachment A for a period of forty-five days, during all times of day and night. "Information about the location of **(941) 809-5186** includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephones described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of T-Mobile, T-Mobile is required to disclose the Location Information to the government. In addition, T-Mobile must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with T-Mobile's services, including by initiating a signal to determine the location of **(941) 809-5186** on T-Mobile's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate T-Mobile for reasonable expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).